# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN A. RHODES,<br><br>            Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>            Defendant. | Civil No. 06cv1453 WQH (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 14] AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT [Doc. No. 17]** |

Plaintiff Karen Rhodes (Rhodes) brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the defendant Social Security Administration Commissioner's (Commissioner) final decision denying her claim for disability insurance benefits. The district judge referred the parties' cross motions for summary judgment for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). After considering the moving papers, the administrative record and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for reversal and/or remand be **GRANTED in part and DENIED in part** and that Defendant's cross motion for summary judgment be **GRANTED in part and DENIED in part**.

## PROCEDURAL HISTORY

Rhodes filed an application for Disability Insurance Benefits and Supplemental Security Income on June 9, 2004 with a disability onset date of September 6, 2003. Administrative Record (AR) 80-82, 325-327. She alleged disability based on mental impairment. AR 106-111. The Commissioner denied

her application for benefits at the initial level.  AR 31-35, 329-333.  Rhodes asked that the Commissioner reconsider the decision, and amended the basis of her disability to also include carpal tunnel syndrome and interstitial cystitis.  AR 114-120.  Upon reconsideration, the Commissioner again denied her application.  AR 39-43, 335-339.

Rhodes requested a hearing before an administrative law judge (ALJ).  AR 44.  The ALJ held a hearing on September 19, 2005.  AR 365-385.  At the hearing Anthony Del Ellis, Esq. represented Rhodes, and Rhodes testified on her own behalf.  Medical Expert Dr. Sydney Bolter and Vocational Expert Dr. Allen Cummings also testified.  Based on the testimony and documentary evidence, on October 22, 2005 the ALJ issued a decision denying Rhodes' application for benefits.  AR 18-28.

Rhodes filed an administrative appeal, but the Appeals Counsel declined to review the ALJ's decision.  AR 5-8.  Rhodes then filed this action under 42 U.S.C. § 405(g).

**RELEVANT FACTS**

**Background.**

Rhodes was born October 15, 1961.  AR 27.  She has a high school diploma and two years of college.  AR 368.  Her past relevant work experience includes working as an auto parts delivery person, administrative assistant, purchasing agent and receptionist.  AR 368-369.  Her work experience ranged from sedentary to light in exertion and from skilled to unskilled.  AR 382.

Rhodes alleges a disability onset date of September 6, 2003, shortly before her admission to a hospital for treatment of depression.  AR 170-181.

**Medical Evidence of Disability.**

Dr. Bernard A. Michlin, a board-certified internist and the consultative examiner, assessed Rhodes' alleged disability based on interstitial cystitis and carpal tunnel syndrome.  AR 260-264; *see* AR 22.  He said the interstitial cystitis "[i]n and of itself should not limit [Rhodes'] ability to function in a workplace, except to increase the frequency of urination."  AR 263.  Rhodes told Dr. Michlin that "the most common time of increased urination is in the evenings."  AR 263.  Dr. Michlin concluded that "[i]n assessing her ability to work, interstitial cystitis should not be an issue."  AR 263.

Upon examination Dr. Michlin found that carpal tunnel syndrome limited Rhodes' rapid alternating movements, fine motor movements, and handling and carrying of objects.  AR 263-264.  He

2

1  recommended a review of the surgeon's notes and results of nerve conduction studies to determine the

2  severity of the carpal tunnel syndrome.  AR 263-264.

3      Regarding the alleged mental disability, Dr. Michlin deferred to a psychologist or psychiatrist to

4  assess Rhodes' ability to make occupational, personal, and social adjustment decisions.  AR 263.  Dr.

5  Glassman, a board-certified psychiatrist at Scripps, did a psychiatric disability evaluation of Rhodes

6  based on an interview with her and a review of her records on file with the Disability Evaluation

7  Division.  AR 265; *see* AR 21.  He found that Rhodes showed, among other things, signs of chronic

8  depression, chronic anxiety, panic attacks, problems with rages, temper and stress, and a history of

9  severe substance abuse (now in remission), all suggestive of a severe personality disorder.  AR 269.  Dr.

10  Glassman was not sure that her mental issues "would represent a permanent and total disability on

11  psychiatric grounds."  AR 269.  He concluded that Rhodes "seems capable of following simple

12  instructions" and "likely is capable of managing her own funds."  AR 270; *see* AR 21.

13      Dr. Shirley Yee, Rhodes' primary treating physician, concluded that Rhodes' multiple

14  limitations prevent her from engaging in a meaningful occupation.  AR 287; *see* AR 23.  Another

15  treating doctor, Dr. Kahn, noted that Rhodes' interstitial cystitis was not disabling.  AR 23, 233, 240-

16  243.  Her treating psychiatrist, Dr. Stass, concluded that her mental impairment would prevent Rhodes

17  from sustaining a regular work week and would make her miss work three or more times a month.  AR

18  289-293, *see* AR 24.

19                          **THE ALJ HEARING AND DECISION**

20  **Rhodes' Testimony.**

21      Rhodes testified that the interstitial cystitis affects her in this way: "[It] is incredibly painful and

22  I can't stand or sit for more than maybe 20 minutes at a time.  I have to lay down and I have to lay on

23  my side.  When I'm standing or sitting[ l]ike now it feels like somebody's pulling my insides out."  AR

24  372.  She said that the interstitial cystitis causes her to "get up about eight to ten times a night to go to

25  the bathroom."  AR 376.  When her attorney asked her how often she urinated during the day, Rhodes

26  responded that she went "maybe, about" the same number of times as she went at night.  AR 376.  She

27  testified that the medication for the interstitial cystitis gives her "[d]iarrhea really bad" and causes her

28  extreme fatigue.  AR 380.

1    Rhodes testified that with the carpal tunnel, she cannot feel anything on the tips of her fingers

2    and has intense pain on both hands.  AR 377.  She cannot spend anytime keyboarding because the pain

3    is so bad, and she wears braces on her wrists as often as she can.  AR 378.  Rhodes also testified that she

4    sees Dr. Stass, a psychiatrist, and that she now feels more comfortable mentally and has not attempted

5    suicide.  AR 370-371; *see* AR 21.

6    **Medical Expert's Testimony.**

7    At the hearing, the Medical Expert (ME) addressed only Rhodes' psychiatric issues.  He testified

8    that Rhodes has "a major depression disorder . . . and a very severe personality disorder with moderate

9    in activities, moderate to marked on social functioning."  AR 374.  He concluded that she has moderate

10   concentration, and "persistence in pace for simple repetitive, non-public minimal contact with peers and

11   supervisors."  AR 375; *see* AR 20.

12   **Vocational Expert's Testimony.**

13   When the ALJ examined the Vocational Expert (VE) he posed this hypothetical:

14   Assume that we have a younger individual as defined in the Social
     Security regulations with a high school education, prior work experience

15   that you've indicated ranges from sedentary to light and unskilled to
     skilled.  If there were a limitation to light work as defined in . . . the Social

16   Security regulations, with **restriction of both upper extremities to only
     frequently handling and limitation to simple repetitive tasks, no**

17   **public contact, a minimal co-worker/supervisor interaction,** would any
     of the prior work activity be available, and if not, would there be other

18   work activity that exists either nationally or locally that could be
     performed?

19

20   AR 382-383 (emphasis added).  The VE responded that the limitation highlighted above would preclude

21   Rhodes from doing a job similar to any of her past work experience.  AR 383.  But he said that these

22   other jobs would be available for her: packager, of which there are 4,000 jobs available in San Diego

23   County and 200,000 jobs nationally; inspector, of which there are 5,900 jobs available in San Diego

24   County and 295,000 jobs nationally; assembler, of which there are 21,000 jobs available in San Diego

25   County and 727,000 jobs nationally.  AR 383.  He explained that all these jobs are light in exertion,

26   unskilled, and require frequent handling and fingering.  AR 383.

27   The ALJ posed a second hypothetical to the VE.  He took the same limitations stated in the first

28   hypothetical, but added the additional criteria of limiting the job possibilities to sedentary work.  AR

4

383.  The VE responded that sedentary inspector jobs were available, with 1,000 jobs available locally and 40,000 available nationally, and 4,600 sedentary assembler jobs are available locally and 161,000 are available nationally.  AR 383.

The ALJ then asked the VE a third hypothetical, incorporating the functional limitations recommended by  Dr. Yee–Rhodes' general treating physician–into the first two hypotheticals.  AR 384.  These restrictions included "[s]itting, standing, and walking less than two hours in an eight hour work day, only occasionally lifting less than ten pounds, and missing more than four days of work per month."  AR 384, 285-287.  The VE replied that no jobs fitting this criteria exist locally or nationally.  AR 384.

Rhodes' attorney then examined the VE and asked if any jobs would be available if, in addition to the restrictions in the first two hypotheticals, Rhodes could use her upper extremities only on occasion.  AR 384.  The VE replied that based on that combination of limitations there would no be no jobs available for Rhodes locally or nationally.  AR 384.  The attorney then asked whether any jobs would be available if, in addition to the limitations in the first two hypotheticals, Rhodes were also restricted to standing and sitting for no more than 15 minutes at a time and lifting approximately eight pounds or less.  AR 384.  The VE responded that there would be no available jobs locally or nationally.  AR 385.

**The Written Decision.**

The ALJ issued a written opinion denying Rhodes' claim for benefits.  AR 18-28.  He first concluded that Rhodes has not engaged in substantial gainful activity since September 6, 2003, her alleged onset date of disability.  AR 19, 27.  Citing the medical reports, he found that Rhodes suffered from these severe impairments: carpal tunnel syndrome, a major depressive disorder and a borderline personality disorder.  AR 23, 27.  He found that Rhodes' interstitial cystitis, back impairments and obesity were non-severe.  AR 23, 27.  The ALJ concluded that Rhodes did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Code of Federal Regulations.  AR 23, 27.

The ALJ found that Rhodes could not perform any of her past relevant work.  AR 20, 26, 27.  He found that the carpal tunnel syndrome imposed these limitations: "lift and/or carry twenty pounds

occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; can occasionally stoop and crawl; and can frequently perform gross manipulation and fine manipulation, bilaterally with the upper extremities." AR 23, 27. While he found that Rhodes' mental impairments were severe so as to restrict certain activities, he found that she retained "the mental residual functional capacity to perform simple, repetitive tasks, with minimal contact with co-workers, in a non public work setting." AR 23, 27. The ALJ rejected Dr. Yee's and Dr. Stass's opinions of disability and limitations. AR 23-24. He also found that Rhodes' allegations of disabling pain, symptoms and limitations were not credible. AR 24-25, 27.

The ALJ concluded that considering Rhodes' age, education, work experience and residual functional capacity, she can perform a significant number of jobs within the national and local economies. AR 27-28. He also found that she has not been under a "disability" as defined in the Social Security Act (SSA) at any time through the date of his decision. AR 28.

**DISCUSSION**

**Evaluating Social Security Disability Claims.**

The SSA provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and is free of legal error. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

To qualify for disability benefits under the SSA, an applicant must show he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 423(d). The SSA regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson*, 359 F.3d at 1194.

First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of

6

Impairments" in the Social Security regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the applicant's
impairment meets or equals a Listing, he or she must be found disabled.  *Id.*  If the impairment does not
meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual
functional capacity to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the
applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant
can perform any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden
at step five rests on the agency.  *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).  Applicants
disqualified at step five are ineligible for disability benefits.  *Id.*

Here, the ALJ found that Rhodes is not currently engaged in a substantial gainful activity, does
not suffer from a "severe" impairment that meets or medically equals one of the impairments listed in
the Code of Federal Regulations and does not retain the residual functional capacity to perform her past
relevant work.  He found that the Commissioner, through the VE's testimony, met his burden of
showing that Rhodes can perform other work in the national economy.  Rhodes challenges the ALJ's
denial of benefits based on his refusal to find that Rhodes' increase in frequency of urination, due to the
interstitial cystitis, did not render her disabled.  Pl.'s Ps&As, p.5, l.14-p.8, l.1.  She argues that the ALJ's
decision is not based on substantial evidence and that he should have further developed the record.

**Substantial Evidence.**

Substantial evidence means "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  When the
evidence is susceptible to more than one reasonable interpretation, the agency's decision must be
upheld.  *Batson*, 259 F.3d at 1193.  Where, as here, the Appeals Council denies a request for review, the
ALJ's decision becomes the final agency decision that the court reviews.  *Id.* at 1193 n.1.  Here, Rhodes
argues that no substantial evidence supports the ALJ's conclusion because evidence in the record
contradicts the ALJ's finding that Rhodes' interstitial cystitis was not severe and the ALJ posed a
hypothetical to the VE that did not include limitations related to Rhodes' interstitial cystitis.

Rhodes argues that the ALJ–without citing to any evidence in the record–found that Rhodes'
interstitial cystitis was under good control with medication and was non-severe.  Pl.'s Ps&As, p.7, l.13-

1   15.  Social Security Regulations provide that an impairment or combination of impairments is not

2   "severe" where the "medical evidence establishes only a slight abnormality . . . which would have *no*

3   *more than a minimal effect* on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th

4   Cir. 1988) (internal quotations omitted) (emphasis in original); *see Daugherty-Rosenbaum v. Life Ins.*

5   *Co. of N. Am.*, 2007 U.S. Dist. LEXIS 5653 (D. Or. 2007) (awarding disability benefits under insurance

6   plan to claimant with interstitial cystitis because her need to urinate several times within a 30 minute

7   period prevented her from working any job she was qualified for).  Rhodes argues that the interstitial

8   cystitis would have more than a minimal effect on her ability to work because she would not be able to

9   consistently sustain work for two hours without interruption.  She argues Dr. Michlin's report supports

10  her position because he said the interstitial cystitis caused an "increase [in] the frequency of urination."

11         This Court is not persuaded by Rhodes' argument.  First, it disagrees with Rhodes'

12  characterization of Dr. Michlin's report.  While he said that the interstitial cystitis caused an "increase

13  [in] the frequency of urination," he also said Rhodes told him that "the most common time of increased

14  urination is in the evenings."  AR 263.  Second, the ALJ documented his decision with evidence.  He

15  reviewed Dr. Michlin's report and cited to it several times.  AR 22, 23, 24.  He relied on a note from one

16  of Rhodes' treating physicians–Dr. Kahn–who said Rhodes' interstitial cystitis was not the basis of a

17  disability.  AR 23.  The ALJ also rejected Dr. Yee's report that supported a finding of disability, because

18  (1) it is unclear whether Dr. Yee is a board certified physician; (2) her findings conflict with Dr. Kahn's

19  findings; (3) Rhodes' complaints to Dr. Yee appeared subjective; and (4) the ability to work is a legal

20  issue to be decided by the Commissioner, and not a medical one to be determined by a doctor.  AR 23-

21  24.

22         Finally, the record demonstrates that Rhodes did not specifically report to a doctor an increase in

23  the need to urinate during the day.  At the hearing she testified that she urinated eight to ten times at

24  night and then vaguely said she went about the same number of times during the day.  AR 376.  Even if

25  she did urinate up to ten times during the day, those times would not necessarily all occur during work

26  hours.  In short, evidence in the record and Rhodes' testimony regarding frequency of urination does not

27  contradict the ALJ's conclusion that the interstitial cystitis would not limit her ability to function in the

28  workplace.

1    Based on substantial evidence supporting the ALJ's finding that Rhodes' interstitial cystitis was

2    non-severe, this Court finds that the ALJ posed a complete hypothetical to the VE that included all

3    relevant limitations to Rhodes' ability to work.  The Court also notes that while Rhodes' attorney posed

4    two additional hypotheticals to the VE, he never included the limitation of a frequent need to urinate.

5    This Court **FINDS** that substantial evidence supports the ALJ's decision to not award disability

6    benefits  based on Rhodes' interstitial cystitis and **RECOMMENDS** that benefits be **DENIED** on that

7    basis. The ALJ relied on substantial relevant, documented evidence that Rhodes is not under a "severe"

8    disability for her interstitial cystitis as defined in the SSA.

9    **Further Development of the Record.**

10    In SSA cases, "the ALJ has a special duty to fully and fairly develop the record and to assure that

11    the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation

12    omitted).  The ALJ must fulfill this duty even when the claimant has counsel. *Id.*  Where an ALJ rejects

13    a doctor's opinions that are uncontroverted, corroborated and supported by explanations, and the ALJ

14    does not fully develop the record regarding the rejection, the ALJ must provide clear and convincing

15    reasons for the rejection. *Id.*  Where there is an ambiguity about a documented, diagnosed illness during

16    the relevant period, the ALJ must develop the record. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir.

17    2001).  Here, Rhodes argues that the ALJ failed to adequately develop the record because he failed to

18    ask the VE about conflicts between his testimony and information found in the Dictionary of

19    Occupational Titles (DOT).[1]

20    Social Security Ruling (SSR) 00-4p requires an ALJ to ask a testifying vocational expert whether

21    the expert's testimony is consistent with the occupational information provided in the *Dictionary of*

22    *Occupational Titles* (DOT).[2]  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007).  The ALJ must

23    "obtain a reasonable explanation for any apparent conflict." *Id.* at 1153.  A court cannot determine

24

25    [1] The SSA has taken administrative notice of the DOT, which is published by the Department of
      Labor and gives detailed physical requirements for a variety of jobs. *See* 20 C.F.R. § 416.966(d)(1);
26    *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007).

27    [2] SSRs constitute the SSA's interpretations of the statute it administers and of its own
      regulations. *Massachi*, 486 F.3d at 1152 n.6. While SSRs do not have the force of law, they are binding
28    on the Commissioner and ALJs.  *Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 851 (9th Cir.
      1996); *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 n.1 (9th Cir. 2001).

1   whether an ALJ properly relies on a vocational expert's testimony and whether substantial evidence

2   supports the ALJ's finding where the record does not contain information that either confirms there is no

3   conflict or reasonably explains the conflict.  *Id.* at 1153-54.  The failure to ask, however, may be a

4   harmless procedural error where there is no actual conflict or if the vocational expert provided sufficient

5   support for his or her conclusion so as to justify any potential conflicts.  *Id.* at 1154 n.19.

6          Here, the Commissioner concedes that the ALJ failed to ask the VE whether there was any

7   potential conflict with his testimony and information in the DOT.  Def.'s Mem. Ps&As p.5, l.14.  But he

8   argues that the failure to ask was harmless error because Rhodes did not present any evidence to show

9   that a conflict exists between the DOT and the VE's testimony.  Def.'s Mem. Ps&As p.5, l.20-p.6, l.8.

10  Rhodes argues that no substantial evidence supports the ALJ's finding that a person limited to simple

11  repetitive tasks can do the job of packager, inspector and assembler and that the VE's testimony differs

12  from information in the DOT.  Pl.'s Mem. Ps&As p.6, ll.13-15; Pl.'s Reply p.3, ll.6-18.

13         The Commissioner provides examples of jobs listed in the DOT under the categories of

14  packager, assembler and inspector that a person with Rhodes' limitations can perform.  Def.'s Mem.

15  Ps&As p.6 n.l.  Rhodes argues that some of the jobs identified–920.687-126 (Marker 11), 920.587-014

16  (Label Coder), 920.587-022 (Sample Clerk, Handkerchief) and 559.687-074 (job in the inspector

17  category)–require a Reasoning Level of 2.  Rhodes asserts that "[a] Reasoning Level of 2 requires the

18  ability to [A]pply commonsense understanding to carry out *detailed* but uninvolved written or oral

19  instructions."  Reply p.3, ll.14-16 (emphasis in original).  The VE's testimony does not provide a

20  reasonable explanation for the discrepancy between Rhodes' limitation to perform only simple,

21  repetitive tasks and information in the DOT that requires the ability to carry out detailed but uninvolved

22  written or oral instructions for these jobs.  The ALJ's failure to inquire into this conflict constitutes

23  reversible error.

24         This Court **FINDS** that the ALJ had a duty to ask the VE about a potential conflict between

25  Rhodes' limitations and definitions in the DOT and whether there is a reasonable explanation for any

26  possible inconsistencies.  Because the ALJ did not inquire, and no evidence in the record shows a lack

27  of conflict between Rhodes' limitations and DOT definitions, this Court **RECOMMENDS** that the

28  District Judge **REMAND** this case in part so that the ALJ can apply SSR 00-4p's requirements and

determine: (1) whether jobs the VE identified have definitions consistent with those in the DOT and compared to Rhodes' limitations; and (2) whether there is a reasonable explanation for any inconsistencies between the VE's testimony and information in the DOT.

### CONCLUSION

Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits based on the interstitial cystitis is supported by substantial evidence and is free of legal error. It also concludes that the ALJ had a duty to ask the VE about a potential conflict between Rhodes' limitations and definitions in the DOT and whether there is a reasonable explanation for any possible inconsistencies. Therefore, the Court **RECOMMENDS** that Plaintiff's motion for reversal and/or remand [Doc. No. 14] be **GRANTED in part and DENIED in part** and that Defendant's cross motion for summary judgment [Doc. No. 17] be **GRANTED in part and DENIED in part**, and that the District Judge **REMAND** in part to the Social Security Administration for further administrative proceedings consistent with this Order.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before ***January 14, 2008***. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before ***January 28, 2008***. Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: December 14, 2007

Hon. Nita L. Stormes
U.S. Magistrate Judge

11